UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOSEPH CILLUFFO,<br><br>    Plaintiff,<br><br>    v.<br><br>OSCAR VEGA,<br><br>    Defendant. | Case No. 3:17-cv-00310-JD<br><br>**ORDER RE HABEAS PETITION; DENIAL OF CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 1 |

Thomas Cilluffo has brought a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities, and Cilluffo filed a traverse. The petition is denied.

## BACKGROUND

In 2015, a California jury found petitioner guilty of assault by means likely to produce great bodily injury, Cal. Penal Code § 245(a)(4), and made the special finding that petitioner in fact inflicted great bodily injury during the offense, Cal. Penal Code § 12022.7. Exh. 1 at 49.[1] Petitioner was sentenced in February 2015 to 180 days in jail and three years of felony probation. *Id.* at 140. In September 2016, the California Court of Appeal affirmed the conviction. Exh. 5. In December 2016, the California Supreme Court denied review. Exh. 7.

The California Court of Appeal summarized the facts of the offense as follows.

> John Spencer -- a limousine driver and the owner of an automobile glass shop -- was working as a driver for his friend's daughter and her friends on prom night. He dropped off his passengers at an In-N-Out Burger restaurant (In-N-Out) and waited at a McDonald's parking lot next door while they ate. About 10 or 15 minutes later, petitioner, also a limousine driver who was waiting for his prom passengers, pulled up next to Spencer's limousine. Appellant [Cilluffo] got out and approached;

---

[1] All exhibit cites refer to the exhibits in the filing at Dkt. No. 11-1.

Spencer rolled down his window thinking appellant "just wanted to have a conversation with me."

Appellant abruptly asked Spencer for his Transportation Charter Party (TCP) number. When Spencer -- who had just started his limousine business and had just received his TCP number -- told appellant that he had not yet put the TCP number on his limousine, appellant began asking more questions, including how many passengers he had and whether he recalled the limousine fire that had occurred on the San Mateo bridge. Spencer tried to explain that he has a TCP number, is fully insured, and knows his passengers, but appellant "just seemed to be getting more and more agitated as the conversation went on." Appellant called the police and "seemed angry" about the San Mateo incident; Spencer "figure[ d]" he was upset about Uber being "a nonlicensed transportation company." Appellant's behavior made Spencer feel nervous and he thought, "I'd like to get away from this guy." Spencer walked over to In-N-Out; his passengers said they were ready to leave. Spencer said "good, because there is a crazy guy over there that I want to get away from." He walked back to McDonald's to get his limousine.

As Spencer got in his limousine, appellant pulled his limousine "kind of in front" of Spencer's limousine. As Spencer slowly tried to "crawl around" appellant's limousine, appellant got out of his limousine and stepped in front of Spencer's limousine. Spencer, who had traveled "probably inches" at that point, came to a "dead stop." Appellant then leaned into Spencer's limousine and said, "you hit me." Spencer, who knew he had not hit Spencer, replied, "no, I didn't." Spencer felt appellant might have leaned into his limousine just so he could say he was hit.

Appellant then came around to the driver's side, entered Spencer's limousine through the open window, and tried to grab the keys. Spencer also tried to get his keys, at which point appellant "grabbed my tie and pulled it around the back of my neck and started pulling on it." Spencer tried to get appellant off of him, "but I'm laying over the back of my console and he is on top of me and he's a pretty big guy so I couldn't push him off of me and . . . so I was having trouble breathing." Spencer put his hands under his tie in an attempt to get some air; appellant said, "I'm going to choke you out."

Unable to get appellant off of him or stop him from choking him, Spencer reached behind and opened the passenger door, hoping they would fall out and separate, giving Spencer a chance to run away. However, as soon as the two fell out, appellant got on top of Spencer's back, with Spencer's stomach and face to the ground. It felt to Spencer like appellant was kneeing him on his back. Appellant again said, "I'm gonna choke you out," as he pulled on Spencer's tie and choked him in a way that made him feel he was going to be choked to death. Spencer came close to losing consciousness and continued to put his hands under his tie in an attempt to catch some air. He did not hit or scratch appellant at any point because appellant had the advantage and seemed to know what he was doing, and Spencer did not want to anger appellant further. Appellant never told Spencer why he was trying to grab the keys or why he was strangling him, and never said he was trying to make a citizen's arrest.

The police and an ambulance arrived at the scene. Spencer's rib cage was sore, his neck had red marks and was sore, and there was some blood coming out of his nose, ear, and thumb. His shirt was torn from the pulling of the tie, his tie was stretched, and his jacket had a hole in it from hitting the asphalt. Medics wanted to

take Spencer to the hospital but he declined because he felt he needed to take his passengers home. By the time he was able to go "see the kids the last two were getting picked up by their parents." Spencer rested in bed on Sunday and went to work at his glass shop on Monday, but went to the hospital after being unable to lift some windshields, and learned he had "a couple of broken ribs." . . . .

  Napa Police Officer Kevin Skillings testified that when he arrived at the scene, he saw appellant and Spencer on the ground next to two limousines. Appellant was straddling Spencer, who was face down on his stomach, and was pulling Spencer's tie up. Spencer's face was red and he looked scared, worried, and as if he were struggling, as he moved his legs up and down. It appeared to Skillings that Spencer was in danger. . . . He did not notice any injuries to appellant. . . . [A]ppellant explained he was placing Spencer under citizen's arrest for assault with a deadly weapon because Spencer hit him with his limousine. Appellant did not seek medical attention that night or at any time thereafter.

Exh. 5 at 1-6 (footnotes omitted).

At trial, petitioner raised a citizen's arrest defense. The trial court instructed the jury that petitioner bore the burden of proving beyond a reasonable doubt that Spencer had assaulted the petitioner with a deadly weapon other than a firearm. On direct appeal of his conviction, petitioner argued and respondent conceded that the citizen's arrest instruction erroneously placed the burden of proof on petitioner instead of on the state. Although petitioner had not objected to the instructions at trial, the Court of Appeal found that petitioner's challenge to the citizen's arrest jury instruction was not barred "because the error affected appellant's substantial rights." Exh. 5 at 9. The Court of Appeal then concluded that the jury instruction error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24 (1967).

As the court held:

  As the trial court properly instructed the jury, a person making a citizen's arrest for a legitimate reason is nevertheless prohibited from using more force than is reasonably necessary to effectuate the arrest. . . . Thus, the prosecution, which had the burden to prove appellant was not making a lawful citizen's arrest, had to prove that appellant was not justified in arresting Spencer because Spencer did not hit appellant with his limousine, or that if appellant was justified in arresting Spencer, the arrest was nevertheless unlawful because he used excessive force in effecting the arrest.
  Here, the jury found beyond a reasonable doubt that appellant committed assault by means likely to produce great bodily injury, and that appellant personally inflicted great bodily injury on Spencer. Through this finding, the jury determined that appellant caused Spencer "significant or substantial physical injury" -- "injury that is greater than minor or moderate harm." (CALCRIM No. 3160; § 12022.7,

3

subd. (f).) There was ample evidence to support these findings, as it was undisputed that appellant went inside Spencer's limousine, put his arm around Spencer's neck, told him he was going to "choke [him] out," went on top of Spencer, with Spencer's face and stomach to the asphalt, and caused Spencer to break at least one rib. Further, although appellant denied doing so, there was witness testimony as well as objective evidence -- e.g., marks around Spencer's neck, a stretched out tie, ripped shirt, blood coming from various parts of his body -- that appellant harmed Spencer in other ways, including choking him with his tie.

     A person conducting a citizen's arrest "must stop short of killing or seriously injuring the fleeing criminal, unless . . . in self defense." (*People v. Lathrop* (1920) 49 Cal. App. 63, 67.) Here, there was little to no evidence that appellant's life was in danger such that it was necessary for him to inflict great bodily injury on Spencer in order to effectuate the arrest. There was no evidence that Spencer possessed any weapons, and there was no objective evidence supporting appellant's testimony that Spencer sped straight at him at 15 miles per hour and hit him while going at around 10 or 15 miles per hour. In fact, he testified that immediately after he was allegedly hit, he was able to run over and reach into the limousine to grab the keys. He did not seek any medical attention for any injuries. A neutral third party witness and a police officer who later arrived at the scene corroborated Spencer's testimony that Spencer lay there helplessly on the ground and did not hit, scratch, or fight appellant in any way. Even appellant did not assert that Spencer was at all aggressive or violent once the two of them were on the ground. In light of the evidence presented at trial, and the jury's findings regarding great bodily injury, we are satisfied that no reasonable jury would have found that the force appellant used in conducting the citizen's arrest was reasonably necessary under the circumstances. Accordingly, appellant's citizen's arrest claim would not have been a defense to the charges against him, and the instructional error was harmless beyond a reasonable doubt.

Exh. 5 at 9-10 (footnote omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's finding that the citizen's arrest instruction was harmless beyond a reasonable doubt was an adjudication on the merits. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). This Court may not overturn that decision unless the Court of Appeal "applied *Chapman* in an objectively unreasonable manner. When a *Chapman* decision is reviewed under AEDPA, a

4

federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. . . . [A] state-court decision is not unreasonable if fairminded jurists could disagree on its correctness. . . . [The petitioner] therefore must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 2198-99 (internal quotations and citations omitted).

In this collateral proceeding, AEDPA review is only a "'precondition to the grant of habeas relief.'" *Id.* at 2198 (quoting *Fry v. Pliler*, 551 U.S. 112, 119-20 (2007)). "For reasons of finality, comity, and federalism," petitioner must also show that he is "entitled to habeas relief based on trial error" because the error "resulted in actual prejudice." *Id.* at 2197 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Under the *Brecht* standard, the Court may grant habeas relief only if it has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 2198 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). The *Brecht* test is "more stringent" than the preconditions set out by AEDPA and *Chapman*. *Deck v. Jenkins*, 814 F.3d 954, 985 (9th Cir. 2016).

Petitioner has failed to show that the Court of Appeals applied *Chapman* in an objectively unreasonable manner, and for the same reasons, petitioner fails to raise under the even stricter *Brecht* standard any grave doubts about the effect of the jury instructions on the verdict. Petitioner does not object to the legal standards articulated by the Court of Appeal, but raises two objections to respondent's memorandum. Petitioner first says that Spencer's rib may have been broken "during the initial physical contact inside the car, when petitioner landed on top of Spencer, whose back was bent over the center console." Dkt. No. 12 at 4. Assuming for the sake of argument that Spencer's rib was broken while the men were struggling inside the car, rather than outside on the asphalt, petitioner does not explain why that alternative timing matters to his habeas petition. Indeed, if petitioner is correct that Spencer's rib was broken even before petitioner forced Spencer onto the ground outside the car, then petitioner's continued use of force outside the car -- for example, choking Spencer with a neck tie -- appears more excessive, not more reasonable.

Petitioner's second objection is somewhat difficult to parse. Petitioner says that "it is rational to conclude that, based on the conflicting versions of events presented, the jury found the citizen's arrest involved an unreasonable use of force solely *because* the instructions required petitioner to prove beyond a reasonable doubt both that the arrest was lawful and that Spencer assaulted him with a deadly weapon." *Id.* at 5 (emphasis in original). Petitioner appears to mean that but for the trial court's erroneous instruction on the burden of proof, the jury would have found for petitioner on the citizen's arrest defense. But other than petitioner's own self-serving testimony, he does not identify any evidence whatsoever -- objective evidence, third-party witness testimony, or otherwise -- showing that petitioner used reasonable force under the circumstances. Significantly, the Court of Appeal noted credibility issues with petitioner's own testimony: petitioner stated that he was struck by Spencer's car at 10 to 15 miles per hour, yet he was still able to "run over and reach into the limousine to grab the keys" and "did not seek any medical attention for any injuries." Exh. 5 at 10. Given the lack of credible evidence supporting petitioner's citizen arrest defense, the Court of Appeal's finding of harmless error was at least subject to some fairminded disagreement and consequently was not objectively unreasonable.

The jury's special finding that petitioner inflicted great bodily injury on his victim also underscores the debatable nature of the citizen's arrest defense. Even if the jury had been instructed properly about the burden of proof, only the use of reasonable force would have been privileged in effecting the arrest. It is hard to see how a finding of great bodily injury can be squared with a reasonable force standard, especially under the facts of this case.

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a). A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must

6

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED.** A certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

Dated: July 27, 2018

JAMES DONATO
United States District Judge